A01A1977. IN THE INTEREST OF G. J., a child.
(554 SE2d 269)

ELDRIDGE, Judge.

G. J. was accused by a Department of Juvenile Justice petition of the offense of simple battery "in that on or about December 13, 2000, . . . the youth did intentionally make contact of an insulting and provoking nature to wit hit in the back with a fist, with the person of Barbara Kicklighter." See OCGA § 16-5-23 (a). Kicklighter was a teacher at Reidsville Middle School where G. J. attended. After a bench trial, G. J. was adjudicated delinquent for such offense. He appeals contending that the state failed to prove intent and, thus, the evidence was insufficient to support the juvenile court's ruling. We disagree.

The intention with which an act is done is peculiarly for the jury [or finder of fact]. It is often difficult to prove with direct evidence an individual's intent as it existed at the time of the act for which they are being prosecuted. Therefore, it is often necessary to prove such intent through the use of circumstantial evidence. Intent, which is a mental attitude, is commonly detectible only inferentially, and the law accom-

---

[6] See *Stephens v. State*, 245 Ga. App. 823, 826 (4) (538 SE2d 882) (2000).

modates this. OCGA § 16-2-6. A [finder of fact] may infer that a person acted with criminal intent after considering the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. In order to support a conviction, such circumstantial evidence does not have to exclude *every* possible hypothesis other than the defendant's guilt, but only *reasonable* hypotheses. OCGA § 24-4-6. Whether a hypothesis is reasonable is a question for the [finder of fact], and such finding will not be disturbed on appeal unless the guilty verdict is unsupportable as a matter of law.

(Citations and punctuation omitted; emphasis in original.) *Eberhart v. State*, 241 Ga. App. 164, 165 (526 SE2d 361) (1999).

In considering a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, we construe the evidence and every inference from the evidence in favor of the juvenile court's adjudication to determine if a reasonable finder of fact could have found, beyond a reasonable doubt, that the juvenile committed the acts charged.

(Citations and punctuation omitted.) *In the Interest of J. M.*, 237 Ga. App. 298 (513 SE2d 742) (1999); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

When viewed in such light, the evidence shows that on December 13, 2000, Kicklighter was supervising the sixth and seventh grade students who were waiting in the hallway prior to the beginning of the school day. As part of her duties, she asked a group of students, of which G. J. was a part, to stop singing. Just as she finished talking to G. J.'s group, the bell rang indicating it was time for the students to go into their classrooms. Kicklighter moved to the middle of the hall, which was three yards wide, and signaled to the students to line up and wait for their teachers to admit them into the classrooms. Still standing in the middle of the hall, Kicklighter turned her back to G. J.'s group to speak to a seventh grade student on the opposite side of the hall who had not stood up. Kicklighter testified that she felt a blow to the back of her right upper shoulder and heard an accompanying thud. As soon as she felt the blow, she immediately turned and out of her peripheral vision saw a "hand — a fist" and a flash of navy blue. As she continued to turn around, she saw the arm moving backward. When she turned completely around, G. J. was standing directly across from her with his back against the wall and facing toward her. The remainder of the students were standing in a line with one of their shoulders against the wall so they could pro-

ceed into the classroom doors. G. J. was the only student nearby wearing navy blue.

When questioned by Kicklighter, G. J. denied hitting her and indicated it was another student. G. J. stated to Kicklighter that he could not describe the other student and refused to attempt to identify the student from the group of students which by this time had entered the classroom. In the school office, G. J. told the principal that he did not hit Kicklighter on purpose, but that it was an accident. At trial, G. J. contended that he was either pushed by another student or tripped and stumbled which caused him to fall against Kicklighter, hitting her with his hands in the back.

In this case, there was sufficient evidence from which a reasonable trier of fact could find beyond a reasonable doubt that G. J. intentionally made contact of an insulting and provoking nature when his hand came into contact with Kicklighter's back. G. J. was part of a group of students that had just been rebuked by Kicklighter for singing loudly in the hall. Kicklighter, as well as several students, testified that when G. J.'s hand came into contact with Kicklighter's back, it was in a fist as opposed to being open-handed as if he had tripped or fell and that the impact made a loud "thump" or "thud" sound. Kicklighter testified that the blow was with such force that she could feel it through several layers of clothing, i.e., a jacket, vest, turtleneck, and camisole. Kicklighter further testified that her shoulder ached all morning; that she considered going to the doctor; that when she arrived home that evening, her shoulder was still slightly red in appearance; and that she placed a heating pad on her shoulder. Several students who observed the incident testified that G. J. did not appear to be pushed or falling when he hit Kicklighter. Further, Kicklighter and B. V., another student, testified that when G. J. brought his arm back from hitting her, G. J. was standing against the wall and not toward the center of the hallway as would be expected if he had tripped or been pushed. Additionally, B. W., a fellow student, testified that G. J. asked him to "lie for him" to the principal.

While G. J. and several other students testified that G. J. was pushed or tripped, the trial court found other witnesses more credible. Whether to believe a witness and the facts to which he testified to was solely within the province of the trial judge as finder of fact.

> An appellate court does not weigh the evidence or determine the credibility of witnesses, but only determines whether the evidence is sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. As long as there is some competent evidence, even though contradicted,

on each element necessary to prove the State's case, the . . . verdict will be upheld.

(Citation omitted.) *Robertson v. State*, 245 Ga. App. 649, 651 (538 SE2d 755) (2000).

In this case, we find that the evidence was sufficient for the trial court as finder of fact to find the essential elements of the crime beyond a reasonable doubt.

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED AUGUST 20, 2001.

*Earle J. Duncan III*, for appellant.

*J. Thomas Durden, Jr., District Attorney, Joe G. Skeens, Assistant District Attorney*, for appellee.